UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL E. MEGGISON,

Plaintiff,

v.

9:20-CV-0436
(GLS/ML)

J. CHAMPLIN, C.O., Marcy Correctional Facility; V. LEONE, C.O., Marcy Correctional Facility; R. RUGARI, C.O., Marcy Correctional Facility; and B. LECLAIR, Sgt., Marcy Correctional Facility,

Defendants.

---

APPEARANCES: OF COUNSEL:

MICHAEL E. MEGGISON
Plaintiff, *Pro Se*
Marcy Correctional Facility
Post Office Box 3600
Marcy, New York 13403

LETITIA A. JAMES
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

LAUREN EVERSLEY, ESQ.
Assistant Attorney General

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

This matter has been referred to me for a Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge. Currently before the Court, in this civil rights action filed by Michael E. Meggison ("Plaintiff") against J. Champlin, V. Leone, R. Rugari, and B. Leclair (collectively "Defendants"), are (1) Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 18), and (2) Plaintiff's letter motion seeking relief in the amount of $25,000.00 (Dkt. No. 30). For the reasons set forth below, I recommend that Defendants' motion be granted and Plaintiff's motion be denied.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts claims of excessive force against Defendants in violation of the Eighth Amendment. (Dkt. No. 1; Dkt. No. 4.) The Court's Decision and Order dated May 21, 2020, thoroughly outlines Plaintiff's allegations and claims. (Dkt. No. 4 at 4-5.)

### B. Procedural History

On April 10, 2020,[1] Plaintiff commenced this action by filing a verified Complaint against Defendants and the New York State Department of Corrections and Community Supervision ("DOCCS") (Dkt. No. 1) together with a motion for leave to proceed *in forma pauperis* (Dkt. No. 2). On May 21, 2020, the Court granted Plaintiff's motion to proceed *in*

---

[1] Plaintiff's Complaint was filed on the docket on April 15, 2020. (Dkt. No. 1.) However, pursuant to the prison mailbox rule, his Complaint is deemed to have been filed on April 10, 2020, when he handed it over to prison officials. (Dkt. No. 1 at 6); *see Douglas v. Bughrara*, 11-CV-1535, 2013 WL 5347285, at *3 (N.D.N.Y. Sept. 23, 2012) ("The prison mailbox rule starts the statute of limitations analysis in prisoner civil rights actions. A *pro se* inmate's motion is deemed filed on the date the papers were given to prison officials." (citation omitted)).

*forma pauperis*. (Dkt. No. 4.) In addition, the Court ordered that Plaintiff's excessive force claims against Defendants survive *sua sponte* review, but the Court dismissed Plaintiff's remaining claims including those against DOCCS. (*Id.*)

On September 3, 2020, Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, in lieu of an answer. (Dkt. No. 18.)

On November 18, 2020, Plaintiff filed a letter motion requesting that judgment be entered in his favor and he be granted damages in the amount of $25,000.00. (Dkt. No. 30.)

**C. Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in his Response. (*Compare* Dkt. No. 18, Attach. 2 [Defs.' Statement of Material Facts] *with* Dkt. No. 21 [Pl.'s Resp.].)

1. Plaintiff is an inmate in the custody of DOCCS.

2. Plaintiff's Complaint was filed April 10, 2020.

3. In the Court's review of the Complaint, the Court liberally construed Plaintiff's Complaint as alleging Eighth Amendment excessive force claims against Defendants.

<u>Exhaustion of Administrative Remedies</u>

4. DOCCS has an inmate grievance process established by 7 N.Y.C.R.R. § 701.1 *et seq.* This process involves three steps: (1) the inmate files a complaint with the Inmate Grievance Review Committee ("IGRC") at the individual facility within twenty-one calendar days of an alleged incident; (2) the inmate appeals to the superintendent of the facility; and (3) the inmate appeals to the Central Office Review Committee ("CORC").

5. Pursuant to Directive 4040 § 701.6 (g)(1)(i)(a), the Inmate Grievance Program Supervisor ("IGPS") "may" grant an exception to the time limit for filing a grievance based on mitigating circumstances.

6. Any request for an extension of time to file a grievance must be submitted in writing to the grievance clerk at the facility where the inmate is housed within forty-five days of the alleged occurrence.

7. In this action, Plaintiff alleged that Defendants subjected him to excessive force during a cell extraction at Marcy Correctional Facility ("Marcy") on March 31, 2020.

8. Plaintiff's allegations in this matter are proper subjects for a grievance under the DOCCS grievance procedures outlined in 7 N.Y.C.R.R. § 701.1 *et seq*.

9. Plaintiff has been incarcerated in the Marcy Residential Mental Health Unit ("RMHU") since March 5, 2020.

10. During all relevant times, Marcy RMHU had a fully functioning inmate grievance process available to inmates, the DOCCS Inmate Grievance Program ("IGP").

11. Plaintiff did not file any grievances at Marcy against Defendants regarding an alleged incident on March 31, 2020.

12. The deadline for Plaintiff to file a grievance relating to his claims in this action was April 21, 2020.

13. The deadline for Plaintiff to submit a written request for an extension of time to file a late grievance regarding his claims in this action was May 15, 2020.

14. Plaintiff did not appeal to CORC the denial of any grievance relating to his claims in this action.

**D. Parties' Briefing on Defendants' Motion for Summary Judgment**

**1. Defendants' Memorandum of Law**

Generally, in support of their motion for summary judgment, Defendants assert that Plaintiff failed to exhaust his administrative remedies in this action. (*See generally* Dkt. No. 18, Attach. 1 [Defs.' Mem. of Law].) More specifically, Defendants argue that (1) Plaintiff did not file a grievance with respect to the alleged incident on March 31, 2020, (2) even if Plaintiff had filed a grievance, he did not appeal that grievance to CORC as the exhaustion process requires, and (3) it is implausible that Plaintiff was able to exhaust his administrative remedies before commencing this action because he commenced this action only ten days after the alleged incident. (*Id.*) As a result, Defendants argue that Plaintiff's claims should be dismissed with prejudice because any attempt to exhaust his administrative remedies now would be futile since the time in which to exhaust has expired. (*Id.*) Defendants' motion also included a notification of the consequences of failing to respond to a summary judgment motion. (Dkt. No. 18 at 3.)

**2. Plaintiff's Opposition**

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff submitted a letter to the Clerk of the Court where he argues that (1) "[a ]lot of [his] [g]rievances got lost or destroyed," (2) the grievance committee is biased and unfair, and (3) the grievance process is "compromised" because the committee notifies the officer accused in the grievance. (*See generally* Dkt. No. 21 [Pl.'s Opp'n].) Plaintiff attached, *inter alia*, the following three documents to his letter to the Clerk: (1) a letter from the Risk Management Department of the Central New York Psychiatric Center stating that it reviewed Plaintiff's concerns and that his "admission to the Residential Crisis Treatment Program (RCTP) was clinically indicated. . . . [and it] found no evidence to support staff operated unprofessionally or outside of policy guidelines"; (2) a letter from Plaintiff dated April 1, 2020, addressed to Governor Cuomo

regarding concerns about officers at Marcy placing inmates in dangerous situations by (a) allowing inmates to escape out of their handcuffs and commit violent acts on other inmates, (b) allowing inmates "who are known for having some altercations with each other on the same company gallery" so that inmates "get hurt on line going to program," and (c) being aware that most inmates have homemade handcuff keys but not taking action to confiscate those keys; and (3) a letter from Plaintiff dated April 29, 2020, addressed to "Mrs. [L]acasteo" regarding Plaintiff's concerns that inmates are not being handcuffed properly and it is resulting in other inmates being "attacked on line going or leaving program." (Dkt. No. 21, Attach. 1.)

### 3. Defendants' Reply

Generally, in their reply, Defendants assert the following two arguments: (1) Plaintiff failed to comply with the Local Rules because he did not file a proper response to Defendants' statement of material facts; and (2) Plaintiff failed to establish that he exhausted his administrative remedies. (*See generally* Dkt. No. 23 [Defs.' Reply Mem. of Law].) With respect to their second argument, Defendants argue that Plaintiff does not claim that he filed a grievance with respect to the alleged incident on March 31, 2020, nor does he allege that any Marcy staff member lost or misplaced his grievance. (*Id.*) In addition, Defendants argue that letters to prison officials or other officials outside the grievance chain of command are insufficient to properly exhaust administrative remedies and the letters that Plaintiff attached to his opposition do not reference the alleged incident on March 31, 2020. (*Id.*)

**4. Plaintiff's Supplemental Submission**

Plaintiff filed a "supplemental submission" in opposition to Defendant's motion for summary judgment. (Dkt. No. 26.)[2] In his supplemental submission, Plaintiff argues that he located a "carbon copy of the original grievance" that he submitted on April 3, 2020, regarding the alleged incident on March 31, 2020. (*Id*. at 1.) Plaintiff's supplemental submission includes the following eleven documents: (1) a letter from Plaintiff addressed to Governor Cuomo dated April 29, 2020; (2) Use of Force Staff Memorandum documents dated March 31, 2020; (3) a memorandum from Defendant LeClair addressed to "P. Reardon, Supt" dated March 31, 2020; (4) laceration care education documents from Montefiore Mount Vernon Hospital; (5) a letter from Plaintiff addressed to "Dept. Commissioner O'Gorman" dated April 29, 2020; (6) a letter from Plaintiff addressed to "Grievance Committee" dated April 3, 2020; (7) a letter from Plaintiff addressed to "Inspector General" dated September 2, 2020; (8) a letter from Bryan Hilton, Associate Commissioner of DOCCS addressed to Plaintiff, dated June 29, 2020; (9) a letter from Plaintiff to IGRC dated September 21, 2020; (10) what appears to be a grievance from Plaintiff dated September 2, 2020; and (11) a letter from Plaintiff addressed to "Dept. Commissioner O'Goreman" dated September 3, 2020. (Dkt. No. 26 at 3-25.)

**E. Plaintiff's Letter Motion**

Plaintiff filed a letter motion that he refers to as a "Notice of Claim," in which, he asks the Court to "grant the relief in the amount of $25,000.00 due to [his] being sprayed and brutally assaulted by [D]efendants." (Dkt. No. 30 at 1.)

[2] Pursuant to Local Rule 7.1(a)(1), a surreply in opposition to a dispositive motion is not permitted. N.D.N.Y. L.R. 7.1(a)(1). However, given Plaintiff's status as a *pro se* litigant, the Court considered Plaintiff's supplemental submission and attachments.

## II. RELEVANT LEGAL STANDARDS

### A. Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-

---

3 As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[4] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[5] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[6]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

4 *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

5 *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

6 *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[7]–even when the non-movant was proceeding *pro se*.[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[9] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[7] Among other things, Local Rule 56.1 (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

[8] *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[9] *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3)); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**B. Standard Governing Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)). In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within

sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see, e.g.*, *Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009) (Section 701.8 has been found applicable to claims of excessive force.). The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel; request an investigation by the Inspector General's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. 7 N.Y.C.R.R. § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent. *Id.* The

superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First,

"an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

## III. ANALYSIS

### A. Defendants' Motion for Summary Judgment

#### 1. Plaintiff's Opposition

As a threshold matter, I note that Plaintiff's response opposition to Defendants' motion (Dkt. No. 21) and his supplemental submission (Dkt. No. 26) were not signed before a notary public or sworn to pursuant to 28 U.S.C. § 1746, and thus need not be considered on a motion for summary judgment. *See Niedziejko v. Delaware & Hudson Ry. Co., Inc.*, 18-CV-0675, 2019 WL 1386047, at *38 (N.D.N.Y. Mar. 27, 2019) (Suddaby, C.J.) (holding that "'declarations' or 'affidavits' that were not signed before a notary public or sworn to pursuant to 28 U.S.C. § 1746"

are inadmissible evidence for purposes of supporting or opposing a motion for summary judgment).

**2. Exhaustion**

However, even considering Plaintiff's opposition (Dkt. No. 21) and supplemental submission (Dkt. No. 26), I still recommend that his Complaint be dismissed for the reasons stated in Defendants' memoranda of law. (Dkt. No. 18, Attach. 1; Dkt. No. 23.) To those reasons, the Court adds the following analysis, which is intended to supplement, but not supplant, those reasons.

Defendants have met their burden of establishing that no genuine issue of material fact exists concerning Plaintiff's failure to exhaust his administrative remedies with respect to the alleged incident on March 31, 2020. The sworn declarations of Erin Pfendler and Rachael Seguin and accompanying exhibits make clear that neither Marcy IGRC nor CORC have any record of Plaintiff filing a grievance or appeal relating to that incident. (*See* Dkt. No. 18, Attach. 3 at ¶¶ 19, 22-23; Dkt. No. 18, Attach. 3 at 9; Dkt. No. 18, Attach. 4 at ¶¶ 11-12; Dkt. No. 18, Attach. 4 at 6-7.)

Assuming, *arguendo*, that Plaintiff filed a grievance on April 3, 2020, regarding the incident on March 31, 2020 (Dkt. No. 26 at 18-19), he does not allege that he completed the required appeals process before commencing this action. (*See generally* Dkt. No. 21; Dkt. No. 26.) Indeed, as Defendants assert, it is implausible that Plaintiff was able to exhaust his administrative remedies before commencing this action. (Dkt. No. 18, Attach. 1 at 8.) According to DOCCS directives, Plaintiff's grievance regarding the incident on March 31, 2020, would be subject to the expedited procedure whereby the grievance would go directly to the facility superintendent. 7 N.Y.C.R.R. § 701.8. The facility superintendent would then have

twenty-five days to render a decision on Plaintiff's grievance. *Id.* § 701.8(f). Plaintiff does not, and cannot, allege that he appealed the superintendent's non-response to CORC pursuant to 7 N.Y.C.R.R. § 701.8(g), because Plaintiff commenced this action only ten days after the alleged incident and seven days after he allegedly filed a grievance. *See Cohen v. Welch*, 16-CV-0593, 2017 WL 3311244, at *5-6 (N.D.N.Y. July 11, 2017) (Dancks, M.J.) (collecting cases) (holding that where the plaintiff filed the federal action one day after the alleged incident "it is implausible that [p]laintiff was able to exhaust his administrative remedies before commencing this action" and that the "[p]laintiff's claim that his grievances were never answered does not excuse his failure to exhaust" because "a prisoner must proceed through all three levels of the [inmate grievance process] to satisfy the PLRA's exhaustion requirement."), *report and recommendation adopted by* 2017 WL 3309713 (N.D.N.Y. Aug. 2, 2017) (Scullin, J.). Therefore, even if Plaintiff filed a grievance regarding the alleged incident on March 31, 2020, he did not complete the administrative appeals process before commencing this action, and thus, failed to exhaust his administrative remedies. *See Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018) (citing 7 N.Y.C.R.R. § 701.6(g)) (holding that where the plaintiff claimed he filed a grievance directly with the IGRC but the IGRC had no receipt of the grievance, the plaintiff admitted that he never received a response and, rather than appeal, he commenced the lawsuit, the "situation was not so opaque that it became 'incapable of use' because '[w]hen a prisoner has filed a grievance but receives no response, the regulations provide a right of appeal.'").

Moreover, Plaintiff's claim that he informed other prison and government officials of his grievances, does not excuse his failure to exhaust. (Dkt. No. 21 at 1.) Indeed, it is well-settled that "[s]uch correspondence does not satisfy exhaustion and falls outside of the grievance procedures." *Rodriguez v. Cross*, 15-CV-1079, 2017 WL 2791063, at *4 (N.D.N.Y. May 9,

2017) (Hummel, M.J.)) (collecting cases), *report and recommendation adopted by* 2017 WL 2790530 (N.D.N.Y. June 27, 2017) (Suddaby, C.J.); *see Geer v. Champan*, 15-CV-0952, 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016) (Baxter, M.J.) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."), *report and recommendation adopted by* 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) (Sharpe, J.). The Court also notes that several of the letters that Plaintiff attached to his his opposition and supplemental submission predate the filing of this action and/or do not refer to the alleged incident on March 31, 2020. *Cohen*, 2017 WL 3311244, at *7 ("[T]he PLRA requires that administrative remedies be exhausted *before* commencing a lawsuit.").

Similarly, to the extent Plaintiff claims his grievances were not answered, that does not excuse his failure to exhaust. As set forth above in Part II.B. of this Order and Report-Recommendation, "a prisoner must proceed through all three levels of the IGP to satisfy the PLRA's exhaustion requirement." *Cohen*, 2017 WL 3311244, at *6. "Thus, where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC." *Hernandez v. Coffey*, 99-CV-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003); *see also Muhammad v. Corr. Officer Douglas*, 15-CV-0935, 2016 WL 3082657, at *4 (S.D.N.Y. May 26, 2016) ("Compliance requires an inmate to appeal properly to the CORC, even if the inmate receives no response from the IGRC at the first step of exhaustion."); *Arce v. Keane*, 01-CV-2648, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."). Only after an inmate has properly exhausted all three levels of review, may an inmate seek relief pursuant to Section 1983. *Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

To the extent that Plaintiff's opposition is construed as arguing that the administrative remedies were not "available" to him, I find that argument unpersuasive. Plaintiff claims that he filed a grievance with the inmate grievance office, which indicates that the procedure was "available" to him. (Dkt. No. 26 at 1); *see Cohen*, 2017 WL 3311244, at *6 (holding that where the plaintiff claimed he "turned in grievances to the IG Office" that "indicates that the procedure was 'available' to him."). In addition, even where a prisoner does not receive a timely response from the IGRP, he is required to complete the appeals process of the IGP. *Id*.; *see Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) ("Under the regulations . . . if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy.") (quotation marks, alteration, citation, and footnote omitted); *Warren v. Bealey*, 12-CV-1318, 2014 WL 4715863, at *9 n.8 (N.D.N.Y. Sept. 22, 2014) (McAvoy, J.) (collecting cases) ("in the event that the IGRC or superintendent . . . do not respond to an initial grievance within the period prescribed, it remains the prisoner's responsibility to file an appeal with the CORC"). Indeed, "[o]nly upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court." *Warren*, 2014 WL 4715863 at *9. (citations omitted).

As a result, I recommend that Defendants' motion for summary judgment (Dkt. No. 18) be granted.

### 3. Dismissal

The Second Circuit has "recognized that failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then

reinstituting the suit." *Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Thus, where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004); *see, e.g.*, *Pettus v. McCoy*, 04-CV-0471, 2006 WL 2639369, at *1-2 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.) (dismissing complaint without prejudice for failure to exhaust). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *Berry*, 366 F.3d at 86; *see, e.g.*, *Hilbert v. Fischer*, 12-CV-3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (collecting cases).

Here, the time in which Plaintiff had to exhaust his Eighth Amendment claim regarding the alleged incident on March 31, 2020, has expired. Assuming *arguendo*, that Plaintiff filed a grievance on April 3, 2020, the facility superintendent was required to respond within twenty-five days, and, to the extent that the superintendent failed to respond, Plaintiff was required to appeal that non-response within seven days. 7 N.Y.C.R.R. § 701.8(g), (h). Thus, Plaintiff's time to appeal expired on May 5, 2020. As a result, I recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed with prejudice. *See Livingston v. Hoffnagle*, 17-CV-1158, 2019 WL 409366, at *7 (N.D.N.Y. Feb. 1, 2019) (D'Agostino, J.) (dismissing without leave to amend, where the exhaustion error would not be cured by permitting the plaintiff leave to amend).

**B. Plaintiff's Letter Motion**

As set forth above in Part III.A. of this Order and Report-Recommendation, I recommend dismissal of this action. As a result, I recommend that Plaintiff's Letter Motion (Dkt. No. 30), requesting judgment in the amount of $25,000.00, be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** for failure to exhaust administrative remedies; and it is further respectfully

**RECOMMENDED** that Plaintiff's Letter Motion (Dkt. No. 30) be **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 9, 2021
Binghamton, New York

Miroslav Lovric
Miroslav Lovric
U.S. Magistrate Judge